**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | **A-19-CV-200-LY** |
| **V.** | § | **A-19-CV-201-LY** |
| | § | **(A-13-CR-305 (11), (12) LY)** |
| **HASAN SOHANI and HUSSAIN SOHANI** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court are Hussain and Hasan Sohani's[1] Motions to Vacate Under 28 U.S.C.

§ 2255 and Memorandum of Law in Support (Dkt. Nos. 1050 and 1053) as well as all associated

responses, replies and supplements (Dkt. Nos. 1069, 1071, 1076 and 1077). The undersigned submits

this Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1 of Appendix C of the

Local Court Rules of the United States District Court for the Western District of Texas.

## I. GENERAL BACKGROUND

On December 17, 2013, along with 18 other defendants, Movants Hasan and Hussain Sohani

("the Sohanis") were indicted on one count of conspiring to distribute analogue and scheduled drugs;

two counts of possession with the intent to distribute synthetic cannabinoids; and one count of

conspiracy to launder the proceeds of the drug offenses.  The substances seized in this case included

408 kilograms of XLR-11, UR-144, AM-220, and other scheduled and analogue controlled

---

[1] Hasan Sohani's civil case number is 1:19-CV-200-LY. His criminal case number is 1:13-CR-305 (12). His brother Hussain's civil case number is 1:19-CV-201-LY, and his criminal case number is 1:13-CR-305 (11).  The Sohanis filed two separate but largely identical habeas motions. Their briefing has been filed jointly—they make the same claims and same arguments, and share the same counsel. The Government filed a single, joint response to both motions, and the Sohanis filed a joint reply.  As a result, the Court addresses the habeas motions in a single Report and Recommendation.

substances. On April 14, 2015, the Sohanis pled guilty to superseding informations charging them

with laundering proceeds from the distribution of scheduled and analogue synthetic cannabinoids

in violation of 18 U.S.C. § 1956(a)(1)(A)(I). As part of their plea agreements, the Sohanis waived

their rights to discovery, appeal or collateral attack of their convictions or sentences on any ground,

except for ineffective assistance of counsel or prosecutorial misconduct. The remaining charges

against the Sohanis were dismissed.

The Court accepted the Sohanis' guilty pleas on September 15, 2015, and began consolidated

sentencing proceedings with all of the defendants. That same morning, however, the Sohanis moved

to substitute counsel and continue their sentencings. The Court granted the requests and continued

the sentencings, conditioned on the Sohanis' new counsel agreeing that the evidentiary portion of

the hearing involving the government presenting its witnesses would go forward that day, and he

would represent them with regard to that portion of the proceedings that was not being continued.

*See* Dkt. No. 926 at 10-11. Nine days later, the Sohanis were intercepted at the Houston airport as

they attempted to board a flight to Qatar and then on to Pakistan, their final destination. The Court

issued warrants for both based on the Pretrial Services Office's petitions alleging they had violated

their conditions of release. They waived hearings on those petitions, and the Sohanis' pretrial release

was revoked. On December 3, 2015, the Court sentenced each of the Sohanis to a 120-month term

of imprisonment and three years of supervised release. Neither brother filed a direct appeal. But on

March 4, 2019, the Sohanis each filed motions to vacate pursuant to 28 U.S.C. § 2255, contending

they were denied effective assistance of counsel and due process.

In sum, the Sohanis allege that their trial counsel were ineffective by not doing sufficient

research to learn that the substances on which the charges against them were based were in fact not

"analogue" drugs under the Controlled Substances Act.  They criticize their counsel for failing to discover information unearthed in other ongoing prosecutions and failing to file a *Brady* motion, and also for not retaining a chemical expert to advise them on the issue.  The Sohanis also argue that their counsel failed to advise them that, after the Supreme Court's June 2015 decision in *McFadden v. United States* (which held that a defendant must have known that a drug was chemically similar to a scheduled drug to be guilty of an analogue charge), they had the right to withdraw from their guilty plea.  They contend that had their counsel's performance not been deficient, they would not have pled guilty, and also that had their counsel informed them of their right to withdraw from their guilty pleas, they would have done so.

The Government responds with four arguments:  (1) the Sohanis' motion is time-barred; (2) there were no *Brady* violations in this case; (3) the materials the Sohanis allege were withheld were not discoverable; and (4) the Sohanis were not denied the effective assistance of counsel.

## II. STANDARD OF REVIEW

Under § 2255, four general grounds exist upon which a defendant may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the District Court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255.  The nature of a collateral challenge under § 2255 is extremely limited:  "A defendant can challenge his conviction after is it presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). If the

error is not of constitutional or jurisdictional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). A defendant's claim of ineffective assistance of counsel gives rise to a constitutional issue and is cognizable pursuant to § 2255. *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1996).

### III. ANALYSIS

**A.    Time-Bar**

The Government first argues that the Sohanis' petitions are time-barred. The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year limitations period for federal habeas proceedings, with the period beginning on one of four dates:

> (1) the date on which the judgment of conviction becomes final;

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). As mentioned, the Sohanis did not file a direct appeal.[2] When a movant fails to file a notice of appeal from the judgment of the trial court, his conviction is final upon the

---

[2]Substantive legal arguments not raised on direct appeal are said to be "procedurally defaulted" and cannot be raised later in a collateral attack. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). There are exceptions to the procedural default rule when a defendant can show (1) cause and prejudice, or (2) actual innocence. *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) (citing *Bousley v. United States*, 523 U.S. 613, 622 (1998)).

4

expiration of the time for filing a notice of appeal, which is fourteen days after the entry of the judgment. FED. R. APP. P. 4(b)(1)(A); *See United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008).  The parties do not dispute that the Sohanis' convictions became final on December 17, 2015, fourteen days after Judge Yeakel signed the final judgment in their cases. Applying the one-year limitation, the Sohanis thus had until December 17, 2016, to file their § 2255 motion. Their petition was filed on March 1, 2019, more than two years after the deadline.

To avoid the impact of the statute of limitations, the Sohanis make two arguments.  In their opening brief—which "weighed in" at 66 pages—they spend only one of those pages on limitations, and their argument is brief:

> Given (1) the government's concealment of th[e] facts [on which the petitions are based], (2) the failure of the Sohanis' attorneys to move for *Brady* disclosure or consult expert chemists, and (3) that the Sohanis have been incarcerated since September 2015, they could not have discovered those facts sooner than March 2018 through the exercise of due diligence.

Dkt. No. 1053-1 at 58.[3]  Though they do not cite the statute, the argument is based on § 2255(f)(4), as it contends that they brought suit within one year of the earliest date they could have discovered the factual basis for their claim, even exercising due diligence.

_____

[3]The Sohanis' petitions also each contain a Declaration.  In Hussain's, he states that he was "not aware numerous independent chemists had opined that UR-144 and XLR-11 were not substantially similar in chemical structure to any scheduled substance and thus did not meet the definition of an analogue drug," and from the time he was charged, he "mistakenly believed that all forms of synthetic marijuana were illegal under federal law, regardless of chemical composition." He claims he first learned otherwise in March 2018, well after he started serving his sentence, in a discussion with another BOP inmate.  He states that upon learning this, he "promptly wrote a letter to my counsel, Nathan Mays, asking him to investigate."  Dkt. No. 1050-2 at 183 ¶¶ 3-4. Hasan's Declaration contains the identical language, except he states that he "first learned the facts [concerning UR-144] in March 2018 from information that an inmate had provided my brother Hussain."  Dkt. No. 1053-2 at 1 ¶ 4.

The Sohanis dedicate seven pages of their reply to limitations, and they elaborate considerably there on their assertions regarding the timeliness of their petitions.  Dkt. No. 1071 at 1-7.  In response to the government's arguments, they state:

> The government alleges a lack of due diligence even though the Sohanis have been incarcerated at all times from mid-September 2015 through the present; even though, as detailed in the Sohanis' initial memorandum and below, the government has for years hidden the facts concerning the dispute within DEA about the analogue status of UR-144 and XLR-112; even though the Sohanis' counsel, on whom they relied in determining whether to plead guilty, never investigated or discussed with them the controversy surrounding the analogue status of UR-144 and XLR-11; and without any suggestion of how the Sohanis, while in prison, could have learned the key facts concerning the chemical structure of those substances as compared to JWH-018 or even known that there was reason to investigate those facts.

Dkt. No. 1071 at 2.  They add that "[f]our additional circumstances undercut the government's claim that movants did not exercise due diligence": (1) "[i]f the government had complied with its *Brady* obligations, movants would at least have been on notice that inquiry was warranted into whether UR-144 and XLR-11 satisfied Prong One of the analogue definition;" (2) the Sohanis' attorneys "never brought the Prong One dispute concerning UR-144 and XLR-11 to their attention," and if they had, the Sohanis "might have been on notice that it warranted investigation;" (3) none of the court proceedings in this case "addressed the 'substantially similar in chemical structure' issue," so the Sohanis were not "on notice to investigate the Prong One issue;" and (4) the Sohanis have "an imperfect grasp on English."  *Id.* at 5-7.[4]

---

[4]In its response, the government contends that the analogue status of the substances may not matter because the Sohanis pled guilty to laundering the proceeds of the sale of analogue *and* scheduled substances.  Dkt. No. 1069 at 14-17.  In addition, the DEA made UR-144 and XLR-11 Schedule I controlled substances on May 16, 2013, which is within the time frame of the alleged conspiracies (*see* Dkt. No. 113, alleging conspiracies lasting until June 26, 2013).  In the end, neither of these facts appear to be important.  Ultimately, the Sohanis each pled guilty to a single-count information charging that, on or about October 23, 2012, they engaged in money laundering by accepting $9,900 "as payment for approximately 1000 packages of Scheduled and analog synthetic

In brief, then, the Sohanis' rest their timeliness claim entirely on the assertion that they could not have learned the facts to support their claim any sooner than March 2018, even exercising due diligence. As the parties note, only "due, or reasonable diligence," not "maximum feasible diligence," is required by the statute. *Starns v. Andrews*, 524 F.3d 612, 618 (5th Cir. 2008) (construing identical language in § 2244(d)(1)(D)). On the other hand, the Fifth Circuit has declined to toll the AEDPA statute of limitations when the petitioner has "slept" on their rights. *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010).

The Sohanis argue that in considering whether they were diligent in pursuing their rights the Court should take into account that they were incarcerated, and were unaware that, as they put it, "inquiry was warranted" into the issue they raise. Dkt. No. 1071 at 5. When the AEDPA was first passed, the courts were faced with deciding how to apply the new one-year statute of limitation to petitioners who were in custody and had limited access to legal materials. In one of the early cases presenting this issue the Fifth Circuit concluded that the petitioner's unawareness of AEDPA's requirements was not a valid reason to toll the statute. *Felder v. Johnson*, 204 F.3d 168, 172 (5th Cir. 2000). The *Felder* court relied on the circuit's "long line of cases holding that mere ignorance of the law or of statutes of limitations is insufficient to warrant tolling," and noted that its conclusion "that Felder's unawareness of AEDPA's requirements is insufficient to warrant tolling is also

---

cannabinoids, and did so with the intent to promote the ongoing distribution of Scheduled and analog synthetic cannabinoids." Dkt. Nos. 563, 573. The date of the offense far precedes the scheduling of XLR-11 and UR-144, and the factual basis for their pleas only sets out acts all taking place before May 16, 2013. Further, the reference to "scheduled" substances in the information appears to be surplusage, given that, other than an unspecified reference to "other scheduled" drugs, the factual basis only mentions UR-144 and XLR-11. Dkt. No. 559 at 7-10. The only fair reading of the information is that the Sohanis' convictions were for laundering the proceeds of the sale of UR-144 and XLR-11.

consistent with the determinations of other courts that have faced similar claims." *Id.* at 172 and n.10.  Among other decisions, the court pointed to *Miller v. Marr*, 141 F.3d 976 (10th Cir.) *cert. denied*, 525 U.S. 891, (1998), which held that tolling was not warranted where the petitioner claimed he lacked access to federal statutes and case law, and only learned of AEDPA's deadline more than a year after it became effective. *Id.* at 978.  In another case the Tenth Circuit applied the identical language of § 2244(d)(1)(D), and held that the later start date applies when a habeas petitioner, exercising reasonable diligence, discovers new facts to support a federal habeas claim, not when he "belatedly discovers previously-issued court decisions that might support a federal habeas claim." *See Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000).  And the Seventh Circuit has noted that the limitations period "begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000).  Finally, in another AEDPA case shortly before *Felder*, the Fifth Circuit itself noted that "ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing." *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999). Thus, while incarceration is a factor to consider, for more than 20 years the due diligence requirement for petitioners like the Sohanis has not been significantly lowered simply because the petitioner is in jail, or is unaware of the legal niceties of his claim.

The Sohanis insist—correctly—that the Court must also consider *their* particular circumstances in determining whether they were diligent. Dkt. No. 1071 at 2-3.  A fact that bears consideration in that regard is that the Sohanis apparently have resources well beyond those of the average habeas petitioner.  The vast majority—hazarding a guess, well over 95%—of § 2255 petitioners in this court proceed *pro se*.  They are thus limited to the materials available to them from

8

the Bureau of Prisons, and the advice they can receive from other inmates. But the Sohanis have the demonstrated ability to access counsel, an ability that continues to this day.  From the date of their arrest up to the present time, the Sohanis have retained no less than seven attorneys to defend them in their original proceedings, as well as represent them in these post-conviction proceedings, where they are represented by two very able attorneys.  Indeed, in his declaration supporting this motion, Hussain stated that one of the first things he did after he had the discussion with a fellow inmate where he states he learned the facts on which this motion is based was to "promptly wr[i]te a letter to my counsel, Nathan Mays, ask[ing] him to investigate." Dkt. No. 1050-2 at 183 ¶ 4. To the extent the Sohanis portray themselves as being hamstrung by their incarceration and lack of legal training, that portrayal is inaccurate.  In determining whether they were diligent, the Court will thus take into account their demonstrated ability to retain counsel.

Though all of these issues are factors in the Court's determination of the Sohanis' diligence, perhaps the most important consideration in this case is how many publicly available decisions that openly discussed all of the facts and law on which the Sohanis base their claim existed even *before* the Sohanis pled guilty and were sentenced.  In brief, the Sohanis's petitions contend they are entitled to relief because the substances at issue in their case were not in fact illegal analogue substances, since they were not chemically similar to a scheduled drug.  They contend the government violated its *Brady* obligation by not disclosing that there was internal DEA dissent on the issue, and their attorneys rendered ineffective assistance by failing to investigate the analogue issue sufficiently. On the first point, the Sohanis spend a large chunk of their opening brief attempting to demonstrate that "the government has for years hidden the facts concerning the dispute within DEA about the analogue status of UR-144 and XLR-112." Dkt. No. 1071 at 2. This portion of the initial brief sets

out a number of cases that were brought by the United States in other jurisdictions during the same time that this case was pending. The brief details how the government in those cases resisted producing information about the disagreement within the DEA regarding whether XLR-11 or UR-144 were sufficiently chemically similar to a listed drug to qualify as analogues. Dkt. No. 1053-1 at 24-57. The Sohanis assert that the information was *Brady* material the government was obligated to turn over to them, yet did not.  They argue that by not turning over the material, and by resisting producing it in these other cases, the government prevented them from learning of the evidence. From this they conclude that, even with diligence, they could not have learned of the disagreement within the DEA before the statute of limitations ran.

In the way of background, the Controlled Substances Act (CSA) makes it unlawful for "any person" to "knowingly or intentionally" distribute a controlled substance. 21 U.S.C. § 841(a)(1). The provisions of the Analogue Act supplemented the CSA by providing that "a controlled substance analogue shall, to the extent intended for human consumption, be treated," "as a controlled substance in schedule I." 21 U.S.C. § 813. A "controlled substance analogue" is defined as a substance whose chemical structure is "substantially similar to the chemical structure of a controlled substance in schedule I or II," and has a "stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than" a schedule I or II controlled substance. 21 U.S.C. § 802(32). At the time of the commission of the Sohanis' crimes, the Government alleged that XLR-11 and UR-144 were analogues of JWH-018, a Schedule I controlled substance.

Pursuant to a procedure adopted by memorandum in 2002, the unit within the DEA responsible for determining whether a substance was an analogue was the Diversion Control unit. A separate unit, the Office of Forensic Science, assisted in the process by "identifying the substance

in question and consulting with [Diversion Control] to determine the structural similarities prong of the analogue definition." Dkt. No. 1053-1 at 7 (quoting 2002 memo, Dkt. No. 1053-2 at 3 ¶ 7). In 2012, during the process of determining if UR-144 was an analogue, Diversion Control solicited the input of Forensic Sciences on the structural similarities of UR-144 and JWH-018 (the scheduled substance the DEA was contending UR-144 was an analogue of). In response, Dr. Arthur Berrier, a Senior Research Chemist in that office, informed Diversion Control that Forensic Science's opinion was that UR-144 was not substantially similar in chemical structure to JWH-018. As noted, however, Diversion Control was the final decision maker and it rejected Forensic Science's input and concluded that UR-144 did in fact qualify as a unlawful analogue. Dkt. No. 1050 at 19. With regard to XLR-11, Diversion Control chose not to seek the input of the Office of Forensic Sciences, and determined without the office's input that XLR-11 also qualified for analogue status. In the 30-plus pages of their brief dedicated to this issue, the Sohanis set out the facts of several cases that were prosecuted in 2012-2014, which they contend demonstrate that the DEA actively hid the Office of Forensic Science's dissent on XLR-11's status. They further contend that in the Sohanis' own cases the government failed to meet its *Brady* obligations by not producing any of this information to them. The Sohanis argue that the government's actions in both of these areas actively impeded their ability to discover the information on which they base their petitions, thereby warranting the limitations period being tolled.

It has been settled law for over 50 years that the Government is required to turn over evidence favorable to the accused. *Brady v. Maryland*, 373 U.S. 83 (1963). Under *Brady*, prosecutors must disclose material, favorable evidence "even if no request is made" by the defense, *United States v. Agurs*, 427 U.S. 97, 107 (1976), and "the individual prosecutor has a duty to learn of any favorable

evidence known to the others acting on the government's behalf in the case. . . ." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). *Brady*, however, "does not obligate the State to furnish a defendant with exculpatory evidence that is fully available to the defendant through the exercise of reasonable diligence." *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002). Further, it is important to keep in mind that the Sohanis pled guilty, and explicitly waived their *Brady* rights in their plea agreements. Dkt. Nos. 559 & 569, at 3. Additionally, the Fifth Circuit has ruled in an *en banc* decision that the entry of a guilty plea precludes a defendant from asserting a later *Brady* violation. *Alvarez v. City of Brownsville* 904 F.3d 382 (5th Cir. 2018).

Regardless, the Sohanis make more of the government's actions than is warranted. The issue here is not whether the government violated *Brady v. Maryland* in either the Sohanis' cases, or these other cases. Rather, the issue is whether the government's actions prevented the Sohanis, if they exercised reasonable diligence, from discovering the information, in turn allowing the Sohanis an extra two-and-a-quarter years to bring their habeas claims. To be sure, there is much to criticize with regard to the DEA's disclosures (or lack thereof) of the disagreement between Diversion Control and Forensic Science regarding UR-114 or XLR-11. But the claim that those actions prevented the Sohanis from learning—*before* the period of limitations expired—that there was a colorable basis on which to challenge the analogue status of UR-114 or XLR-11 simply does not hold up to scrutiny. The Sohanis' own brief demonstrates this. As noted, it contains a detailed description of discovery fights in other cases to show how the government hid the DEA's internal disagreements from them and other defendants. Dkt. No. 1053-1 at 24-57. While these cases may well demonstrate that the government was less than forthcoming with this information, it also shows that there were sources other than the government from which the Sohanis could have discovered the basis of their claim

here.  These cases raised the very same issues the Sohanis raise now, and did so well before the Sohanis filed their motion.[5]

Many other cases also discussed the internal dispute within the DEA about the status of UR-144 and XLR-11.  These decisions were published even before the Sohanis' entered their guilty pleas in April of 2015, and well before the AEDPA's one year statute of limitations ran.  In fact, in their affidavits, the Sohanis' trial attorneys state that *they* were familiar with the first case to address these issues—*United States v. Fedida*—and acquired a transcript of a hearing in that case, though they also state they were unaware of the internal dissent within the DEA. Dkt. No. 1076-1 at 3.  In one of the orders published in *Fedida* in 2012, the court noted that the government supplied Fedida with information that a DEA scientist opined that UR-144 was not substantially similar in structure to JWH-018. *United States v. Fedida*, 942 F.Supp.2d 1270, 1279 (M.D. Fla. 2012).  A simple reading of this publicly available order would have revealed to the Sohanis the DEA's internal disagreement.[6]  Similarly, in an opinion published 17 months before the limitations period expired, the court directly discussed the issues regarding XLR-11 and UR-144, including Dr. Berrier's

---

[5]The cases identified in the brief are: *United States v. Stockton*, No. 1:13-cr-00571 (D.N.M.); *United States v. Broombaugh*, No. 14-40005-DDC (D. Kan.); *United States v. Williams*, No. 4:13-cr-00236 (W.D. Mo.); *United States v. Gas Pipe, Inc.*, No. 3:14-cr-00298-M (N.D. Tex.); and *United States v. $177,844.86 in United States Currency*, 2015 WL 4227948 (D. Nev. July 10, 2015). In addition to the last case listed, at least one other of these cases produced decisions published on Westlaw. *See, e.g., U.S. v. Reulet [& Broombaugh]*, 2014 WL 6675076 (D. Kan. Nov. 25, 2014).

[6]There were also, no doubt, a number of pleadings filed in *Fedida,* publicly available through the PACER system, that disclosed the information as well.  The government attached one such filing to its supplemental brief.  That filing expressly states that the United States' counsel in that case had "provided to the defendant information that a DEA scientist who was consulted regarding the analogue status of UR-144, but was outside the office which is responsible for making analogue determinations, at one time opined that UR-144 and JWH-018 were not substantially similar in structure." Dkt. No. 1076-4 at 1.

dissenting views, and identified *Fedida* and four additional cases, all from 2012 or 2013, in which the Government produced internal DEA emails and Dr. Berrier's opinion regarding UR-144. *United States v. $177,844.68 in U.S. Currency*, 2015 WL 4227948, at *3 (D. Nev. July 10, 2015) *(*citing *United States v. Hummel*, No. 6:12-CR-209-ORL-37-DAB (M.D. Fla. 2012); *United States v. Henry*, No. 1:13-cr-00142–WS (S.D. Ala. 2013); *United States v. Libby*, No. 1:13-CR-00920-TPC (S.D.N.Y. 2013); and *United States v. Gross*, No. 2:13-CV-00100-JCM-GWF (S.D. Al. 2013)). In fact, there are several other cases not mentioned in the briefing that also predate the Sohanis' guilty plea and incarceration that addressed the controversy concerning UR-144 and XLR-11, any one of which would have disclosed the very same information to the Sohanis: *United States v. Bays*, 2014 WL 3764876, at *7 (N.D. Tex. July 31, 2014); *The Smoke Shop, LLC v. United States*, 949 F. Supp. 2d 877, 879 (E. D. .Wisc. 2013); *United States v. Riley*, 2014 WL 537013, at *5-6 (D. Nev. Feb.7, 2014); and *United States v. Carlson*, 2013 WL 5125434, at *30 n. 33 (D. Minn. Sept. 12, 2013).

So the question is, could the Sohanis have learned of any of these cases through the exercise of reasonable diligence? They contend not, pointing to their incarceration and lack of English proficiency, and they criticize the government for failing to offer "any suggestion of how the Sohanis, while in prison, could have learned the key facts concerning the chemical structure of those substances as compared to JWH-018 or even known that there was reason to investigate those facts," Dkt. No. 1071 at 2. But that is not quite accurate, as the government contends they could have learned of this information, or had reason to look further into the topic, from *Fedida*. Dkt. 1069 at 6. And the government is correct (even though it fails to cite the many cases beyond *Fedida* noted above). While the Court would not expect a petitioner to have full unlimited access to Westlaw, that does not mean that a petitioner may fail to do any legal research and still remain "diligent" for

14

purposes of § 2255(f)(4).  As noted, the Sohanis had the ability to retain counsel, and thus could have requested counsel to look into the issue much earlier.

The sole case the Sohanis cite to argue to the contrary does not help their claim.  In that case, a petitioner brought a tardy *Brady* and ineffective assistance claim, based on information suggesting that the state's forensic pathologist had given flawed or false testimony.  The pathologist had by the time of the filing become notorious, and well before the petitioner filed his habeas claim in 2012, his failings had become public.  The court noted that a

> Supreme Court of Mississippi concurrence (2007); an article in the Jackson Free Press (2008); an article in the Clarion Ledger (2008); three press releases from the Innocence Project (2008), and two articles in Reason magazine (2006 and 2007), all rais[ed] serious concerns about Dr. Hayne's qualifications as a forensic pathologist and as an expert witness.

*Osborne v. Hall*, 934 F.3d 428, 433 (5th Cir. 2019).  The court held that this information "was sufficient to provide notice of the factual predicate for claims based on challenges to Dr. Hayne's qualifications."  *Id.*  The Sohanis argue that *Osborne* supports their diligence argument, because the court distinguished the situation there from one where a prisoner

> "would have had to scour the court records to find the information." That is precisely the circumstance here; to learn of the dispute about the analogue status of UR-144 and XLR-11, both within the DEA and in the larger scientific community, the Sohanis would have had to scour the record of the cases discussed in movants' initial memorandum.

Dkt. No. 1071 at 4 (quoting *Osborne*, citation omitted).  That is incorrect, however, as demonstrated above.  Though there is no doubt that a thorough review of the *Fedida* filings would have brought the issues to light, that type of "scouring" of the record was not required here, since numerous published court decisions summarized and explained all of the information about XLR-11 and UR-144 the Sohanis rely on in their petitions.

15

The Sohanis' diligence argument relies heavily on what they claim both the government, and their attorneys, failed to do or disclose. They argue that because the government failed to disclose the DEA's internal disagreement about the chemical structures of the substances, and because their attorneys did not discover and inform the Sohanis of the issue, the Sohanis could not, even with diligence, have understood "that inquiry was warranted into" that topic. Dkt. No. 1071 at 5. That is, since they had no reason to know there was something they should investigate, they contend they cannot fairly be criticized for not conducting that investigation sooner.

When parsed, the Sohanis' argument comes down to what is ultimately a very weak claim: because neither the government nor their own attorneys ever "brought the Prong One dispute concerning UR-144 and XLR-11 to their attention," the Sohanis were not "on notice that it warranted investigation." Dkt. No. 1071 at 6. The unstated next step of that argument is, "because they were not on notice the issue warranted investigation, their failure to investigate their claims sooner does not demonstrate a lack of diligence." Tellingly, they do not cite a single case where the habeas statute was tolled because the defense attorney—prior to conviction and sentencing—failed to sufficiently "flag an issue" for a defendant so the defendant knew to investigate the issue after conviction. Similarly, while courts have extended the statute of limitations for habeas petitions in cases raising *Brady* claims when the *Brady* material remained undisclosed, there are no cases tolling limitations where, like here, the *Brady* information was disclosed in a number of published legal decisions before, during, and after the defendants' prosecutions.[7] The lack of case law isn't

---

[7]*See, e.g.*, *Jefferson v. United States*, 730 F.3d 537, 545-46 and 546 n.2 (6th Cir. 2013) (distinguishing a case where the *Brady* material had "become a matter of public record" from the case at issue, where the government had continued to keep the *Brady* material confidential long past the underlying conviction).

surprising, moreover, as the Sohanis' argument turns the diligence requirement on its head—it contends that a defendant's obligation to be reasonably diligent in pursuing a claim is only triggered when someone tells them they have a claim.  That is simply not the law, as is discussed above. Diligence is not judged from a subjective perspective, but rather an objective one.  *United States v. Denny*, 694 F.3d 1185, 1189 (10th Cir. 2012).  A petitioner exercising reasonable diligence could have discovered the basis for the claim made here from any one of the dozen or more cases previously discussed.

And further, that the analogue status of UR-144 and XLR-11 was a crucial factor in the Sohani's case and required proof of chemical similarity has never been a secret.  It is an element of their offense, and is contained in the statute under which they were charged.  "[I]gnorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing."  *Fisher*, 174 F.3d at 714.  Here, the CSA put the Sohanis on notice that, to convict them, the government had to prove the substances they were being charged with distributing, and with laundering the proceeds of distributing, was a substance whose chemical structure was "substantially similar to the chemical structure of a controlled substance in schedule I or II."  21 U.S.C. § 802(32).  Simply because they did not know: (1) there was internal disagreement at the DEA regarding whether the chemical similarity prong could be met with regard to UR-144 or XLR-11; or (2) that there was not consensus in the greater scientific community regarding that issue, does not mean they were entitled to sit on their rights until they learned this information.  Chemical similarity was an element of their offense,

and that is certainly sufficient to have put them on notice of the centrality of that question to their convictions.  Moreover, as already noted, it was not hard to learn of this information.[8]

The Sohanis' complaints about their attorneys do not aid their diligence argument either, for much the same reasons as their *Brady* argument fails to do so.[9]  To begin, the Fifth Circuit has held that because a person pursuing a post-conviction writ has no right to counsel, "[i]neffective assistance of counsel is irrelevant to the tolling decision." *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002). Further, though the Sohanis do not raise their complaints about their attorneys' failure to investigate the analogue issues as an equitable tolling argument, the case law in that area is instructive, since equitable tolling also contains a diligence prong.[10]  It is extraordinarily rare for

___

[8]In addition to the cases already discussed, a review of the "Wayback Machine" internet archive available at https://web.archive.org/ indicates that information about UR-144, XLR-11 and JWH-018, their chemical characteristics, and many other details was available on Wikipedia in 2016 and earlier. See https://web.archive.org/web/20160403181556/https://en.wikipedia.org/wiki/UR-144 (UR-144 wiki entry dated April 3, 2016); https://web.archive.org/web/20160414115417/https://en.wikipedia.org/wiki/XLR-11_(drug) (XLR-11 entry dated April 14, 2016); and https://web.archive.org/web/20160417164147/https://en.wikipedia.org/wiki/JWH-018 (JWH-018 wiki entry dated April 17, 2016).

[9]In brief, the Sohanis complain that their attorneys failed to adequately investigate the chemical properties of XLR-11 and UR-144 vis-a-vis the scheduled substance JWH-018, and failed to learn of the internal DEA controversy, and the lack of consensus in the chemical scientific community on whether either UR-144 or XLR-11 was substantially similar to a scheduled drug. Further, they complain that the attorneys did not inform them that the Supreme Court's decision in *McFadden v. United States*, 576 U.S. 186 (2015), required that, to get a conviction, the government had to prove the Sohanis *themselves* knew the drugs they were selling were substantially similar from a chemical standpoint to a scheduled substance, and that they could withdraw their guilty pleas because *McFadden* was handed down two months after they had entered those pleas

[10]The Fifth Circuit has noted that the "diligence" inquiries for purposes of statutory tolling under § 2255(f)(4) and equitable tolling are indistinguishable. *United States v. Rodriguez*, 858 F.3d 960, 964 n.4 (5th Cir. 2017) ("Although [cited authority] involved the question of what kind of diligence is required for a court to apply equitable tolling to a habeas petition—and equitable tolling is distinct from § 2255(f)(4)—we find no reason to differentiate diligence under equitable tolling from diligence under § 2255(f)(4).").

18

an attorney's actions to justify application of equitable tolling.  Courts hold that if a habeas petitioner

asserts he was prevented from filing a timely petition because of his attorney's actions, to prevail he

must prove more than ineffective assistance of counsel.  Instead, only "abandonment" by counsel

can support equitable tolling.  *Maples v. Thomas*, 565 U.S. 266, 282 (2012); *see also Cousin v.

Lensing*, 310 F.3d 843, 849 (5th Cir. 2002) (attorney error insufficient to support equitable tolling)*;

North v. Davis*, 800 Fed. Appx. 211, 216 (5th Cir.), *cert. denied*, 2020 WL 2515679 (May 18, 2020).

Accordingly, the Sohanis' claim that their attorneys' failures—which took place *before* they were

convicted—somehow impacts the Court's decision about whether the Sohanis were diligent in

pursuing their rights *after* conviction, well after the attorneys ceased representing them, is an

extraordinarily difficult argument to prevail on.

     As with the government's actions concerning the internal disagreements at the DEA, some

of the attorneys' actions may leave room for criticism.[11]  But that is a far cry from saying that those

actions amounted to the sort of wholesale abandonment of a client that is required to support an

equitable tolling claim.  In fact, the evidence before the Court is arguably not even sufficient to merit

a hearing on the substantive ineffectiveness issue, if that claim wasn't time barred.  In its

supplemental response the government submitted the affidavits of Wendell Odom,[12] and David

---

[11]For example, both attorneys note in their affidavits that during their representations they were unaware of the dissenting opinions within the DEA, and the better practice, in hindsight, would have been to hire their own expert forensic chemist.  Dkt. Nos. 1076-1 at 4-5; 1076-2 at 5-6.

[12]Wendell Odom is a highly-regarded criminal defense attorney in Houston.  Before practicing on the defense side, Odom was an assistant district attorney in Harris County, and then an Assistant U.S. Attorney in the Southern District of Texas.  He is a former president of the Harris County Criminal Lawyers Association, is the Chairman of the State Bar Committee on Pattern Criminal Jury Charges, and is on the Criminal Justice Act committee that selects lawyers to be appointed in federal criminal cases in the Houston Division of the Southern District of Texas.  *See* https://www.wendellodom.com/our-firm/#odom.

Cunningham[13] ( Dkt. Nos. 1076-1 and 1076-2), who served as trial counsel for Hasan and Hussain

Sohani, respectively, up until the initial sentencing hearing when the Sohanis replaced them with

Don DeGabrielle.[14]  In the affidavits, both attorneys relate that they were aware of *Fedida*, and

acquired a transcript of a hearing in that case. They testify that they were also aware of litigation in

other courts, including a case in the San Antonio Division of this District (*United States v. Jaffer*,

5:13-CR-580) where the defendants challenged the chemical composition of synthetic cannabinoids

in an effort to establish they were not substantially similar to a scheduled substance. The attorneys

state that they concluded that in most cases they located at that time, those arguments had been

unsuccessful. Additionally, the attorneys became aware that an attorney in the *Jaffer* case had hired

a chemist to test the substances. They met with the attorney and chemist, and Odom states that he

and Cunningham "were not impressed with the attorney who had given the opinion, the chemist or

his conclusions," Dkt. No. 1076-1 at 3, and Cunningham relates that he "seem[s] to recall not being

impressed with the expert or his report," Dkt. No. 1076-2 at 4.

---

[13]David Cunningham is also a highly-regarded defense attorney. As he notes in his Declaration, he has an extensive federal criminal practice, having appeared in roughly 400 criminal cases in federal court.  He has also authored over 100 appellate briefs, and defended a genocide case before the International Criminal Tribunal for the former Yugoslavia.  He has served on the board of both the Harris County Criminal Lawyers Association, and the Texas Criminal Defense Lawyers Association, and is an adjunct faculty member at the University of Houston Law Center.  Dkt. No. 1076-2.

[14]Don DeGabrielle was the former United States Attorney for the Southern District of Texas. He began his career as a Special Agent for the FBI, and became a federal prosecutor, working in both New Orleans and Houston, rising to be the First Assistant in that office before his appointment as U.S. Attorney.  When he died in 2018, he was the head of the White Collar Criminal Defense and Government Investigations section of Lewis Brisbois.  *See* https://lewisbrisbois.com/newsroom/press -releases/former-us-attorney-don-degabrielle-joins-lewis-brisbois. Mr. DeGabrielle died in January 2018.  Dkt. No. 1076 at 1.

They also reached out to counsel for the co-defendants' in the case to determine if those defendants were planning on hiring a chemist, and the potential of sharing the cost of a joint expert. Dkt. Nos. 1076-1 at 3; 1076-2 at 4. Ultimately, they determined not to hire an expert, concluding that in light of the outcome of similar cases, the issue was not likely to succeed at the trial court level, would likely require an appeal, and the outcome of that would be uncertain. *Id.* Contradicting the claims the Sohanis make in their briefs, the attorneys testify that they discussed these facts and their opinions with the Sohani brothers, telling them that an argument based on the chemistry may or may not prevent them from being found guilty if they proceeded to trial, and they believed that in light of the evidence on the wiretaps and from cooperating co-defendants, it was most likely they would be found guilty, which would almost certainly lead to a higher sentence than pleading guilty would. Dkt. Nos. 1076-1 at 4; 1076-2 at 5. The attorneys stated that ultimately the Sohanis agreed that the best way to proceed was to plead guilty and try to procure the lowest sentence possible through cooperation or other means. Dkt. No. 1076-1 at 3-4; 1076-2 at 3-4. The Sohanis now criticize this strategy, arguing that they could have obtained a better deal by pursuing the analogue issue at trial, or by threatening to do so, and they point to several cases where they assert that strategy worked. Dkt. No. 1077 at 3-4. But the case law makes clear that in reviewing ineffective assistance of counsel claims, the Court is to treat these very sort of strategy decisions with great deference, and not second guess them. *Strickland v. Washington*, 466 U.S. 668, 681 (1984).[15] Further, even if the

---

[15]Later in the *Strickland* decision, the Court elaborated, explaining that

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable

Court were to conclude that their counsel's strategic choice was a mistake, it remains far from the sort of attorney abandonment the courts have required to support tolling the statute of limitations. Finally, as already detailed with respect to the *Brady* issue, even if the Court assumed the attorneys were ineffective, that alone is insufficient to meet the requirement of § 2255(f)(4).  Under the statute, the Sohanis have to demonstrate that the ineffectiveness prevented them from learning of the basis for their claim, had they exercised due diligence.  Given the ample public record disclosing all of the facts relevant to the Sohanis' claim, they cannot carry that burden.

It bears noting that it was not only the Sohanis' attorneys who did not raise the analogue issue in this case.  There were 18 other defendants in this case, more than half of whom retained counsel. The list of attorneys hired by them reads like a "Who's Who" of the best federal criminal defense lawyers in Austin (and Houston, when the Sohanis' attorneys are included).  The group included Gerry Morris, Steve Orr, Chris Gunter, Joe Turner, Dan Dworin, Christie Williams, Brian Roark, Joe Kendall, Bill Hines, Tamara Needles, and John Kuhn.[16]  Not one of these lawyers raised the issues the Sohanis criticize their counsel for failing to raise.  Taken to its logical conclusion, the argument the Sohanis make means there would not have been an acceptable strategic basis for any

---

> decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id*. at 690-91.

[16]Collectively, this group includes a former United States District Judge and member of the U.S. Sentencing Commission, a former President of both the National and Texas Criminal Defense Lawyers Association, multiple board members of both the TCDLA and the Austin Criminal Defense Lawyers Association, the current and the former Chair of the Austin Division CJA Panel Committee, a current Travis County District Judge, many former state prosecutors, one former federal prosecutor, and represents, collectively, hundreds of years of practicing criminal law and hundreds of cases tried.

of these attorneys *not* raising the analogue drug issue for their clients in this case.  If the Court were to accept the Sohanis' ineffective assistance argument, it would mean every one of these highly competent defense attorneys (as well as the other very able counsel not listed above who appeared in the case) was ineffective in their representation, which would surely be a first, and which by itself is a good reason to question the argument.

Finally, the Court need not pause long on the *McFadden* case.  The attorneys testify that they were aware of the Supreme Court's holding in *McFadden*, which discussed the *mens rea* needed to sustain a conviction in an analogue drug case. They state that they believed the government had a good deal of evidence to meet the burden *McFadden* imposed on the government's case, in light of the tapes and other acts of the Sohanis that suggested the Sohanis believed what they were doing was illegal.  The attorneys therefore believed it would be unwise to try the case on this issue.[17]  As noted, the Sohanis chose to change counsel in September 2015, and the Sohanis thereafter did not seek to withdraw their guilty plea, which creates the strong inference that Mr. DeGabrielle also did not believe *McFadden* helped the Sohanis' case.  Regardless, none of this matters unless the Sohanis can

---

[17]*McFadden* held that the knowledge requirement may be established through circumstantial evidence, which could include "a defendant's concealment of his activities, evasive behavior with respect to law enforcement, [and] knowledge that a particular substance produces [an effect] similar to that produced by controlled substances." *McFadden*, 135 S. Ct. at 2304 n.1. The Sohanis' counsel state they were concerned about the evidence of the Sohanis' attempts to hide their behavior being sufficient to convince a jury of the requisite knowledge.  The Sohanis' Presentence Investigation Report reflects that the Government had intercepted numerous telephone conversations between the Sohanis and other co-conspirators discussing the sale of various synthetic cannabinoids and deposits of money into the Sohanis' accounts, including directives by the Sohanis to "structure" the payments to avoid alerting officials of the deposits. Dkt. No. 907.  *See United States v. Al Haj*, 731 Fed. Appx. 377, 379 (5th Cir. 2018) (applying *McFadden* on direct appeal in upholding a jury verdict against a coconspirator in an analogue drug case where the jury found the defendant knew that he was distributing controlled substances because of his actions in trying to evade detection by law enforcement).

show that their attorneys' acts somehow prevented them from learning about *McFadden* and any post-conviction claim it might support *before December 17, 2016*, their statutory deadline for filing a habeas claim. Because *McFadden* came down in June of 2015, even before the Sohanis were sentenced, they could have discovered it within the applicable AEDPA statute of limitations had they exercised reasonable diligence, for all of the reasons already explained with regard to the analogue drug issue.

In short, even if the Court assumes that during the prosecution of the Sohanis the government was obligated by *Brady* to produce the DEA materials on this issue and that it attempted to hide the information in the cases catalogued in the Sohani's briefing, and even if the Sohanis' attorneys were ineffective for not investigating and raising the analogue drug issues, none of this prevented the Sohanis from learning of these matters within the one year period following the date the judgments in their cases became final, and certainly by more than a year before the date they filed their petitions (March 4, 2019). There were plainly other means by which the Sohanis could have discovered the information well before the statute of limitations for filing their habeas petition ran had they been reasonably diligent. Their petitioners are thus time-barred. Given this conclusion, the Court declines to address the substantive grounds for relief the Sohanis raise in their petitions.

## B.     Request for an Evidentiary Hearing

In their briefing the Sohanis state that "the Court should hold an evidentiary hearing on the due diligence issue." Dkt. No. 1071 at 7. When a prisoner files a § 2255 motion, the district court must grant an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *U.S. v. Samaniego*, 532 Fed. Appx. 531 (5th Cir. 2013) (citing § 2255(b)); *see also United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir.

1992) ("A motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief."). There is not a need for an evidentiary hearing on the due diligence issue in this case. The Court can resolve the time bar issue without going beyond the paper record or without having to resolve any fact disputes. Because the material before the Court conclusively shows that the claims are time-barred, there is no need to set an evidentiary hearing in this case.

The factual matters that the Sohanis rely on for their equitable tolling argument are:

- they were unaware of the internal disagreement at the DEA regarding the analogue status of UR-144 and XLR-11;

- they were unaware that there was not a consensus in the scientific community regarding whether UR-14 and XLR-11 were structurally similar chemically to JWH-018;

- in the cases detailed in their briefing, the government attempted to keep this information private;

- the government was obligated by *Brady* to produce the DEA records related to the internal disagreement and did not;

- the Sohanis' lawyers were ineffective by not adequately investigating whether UR-144 and XLR-11 qualified as controlled substance analogues and litigating that issue in their case;

- their attorneys did not discuss these issues with the Sohanis;

- the Sohanis have limited English skills; and

- they have been incarcerated since September 2015.

Even assuming the truth of all of these statements, as the Court has explained in detail above, the Sohanis are still not entitled to any relief on their petition. The conclusion that the claims are time-barred follows from the fact that the information the Sohanis needed to be able to file their petitions

was in the public domain from the time they were sentenced; indeed, it was there *before* they were sentenced, and even if the Court assumes the truth of every fact the Sohanis allege, they cannot carry their burden of demonstrating they were diligent in pursuing their claims.

## IV. RECOMMENDATION

In accordance with the preceding, the undersigned **RECOMMENDS** that the District Court **DENY** Hasan Sohani's Motion to Vacate Under 28 U.S.C. § 2255 (Dkt. No. 1050) and **DENY** Hussain Sohani's Motion to Vacate Under 28 U.S.C. § 2255 (Dkt. No. 1053) as time barred under the AEDPA.

## V. WARNING

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations within fourteen days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

## VI. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)

(1)(B). Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, effective as amended to February 1, 2010, the District Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability ("COA") may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000). In cases where a district court rejected a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, the undersigned believes that the time bar issue is clear, and reasonable jurists could not debate the denial of the movant's § 2255 motion on this ground, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The undersigned therefore recommends that a certificate of appealability not be issued.

SIGNED this 13th day of August, 2020.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE